## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Andrew Peter Scott

March 7, 1996

Case No. F-95-2854

BY JUDGE DONALD W. LEMONS

The matter before the Court is the defendant's Motion to Strike the Commonwealth's Evidence on the charge that he did "sell, give, distribute, or possess with intent to sell, give, or distribute marijuana" in a quantity in excess of five pounds, in violation of Va. Code § 18.2-248.1(a)(3).

At the conclusion of the Commonwealth's evidence, the defendant moved to strike the Commonwealth's evidence and the Court took the matter under advisement. The defendant rested without presenting any evidence and renewed his Motion to Strike. The parties argued the motion at a hearing on December 6, 1995, and submitted briefs in support of their respective positions. For the following reasons, the defendant's Motion to Strike is granted in part and denied in part, and the Court finds that the defendant did "sell, give, distribute, or possess with intent to sell, give, or distribute marijuana" in a quantity in excess of one-half ounce but not more than five pounds in violation of § 18.2-248.1(a)(2).

On May 24, 1995, in the performance of his duties, Inspector Morris Green intercepted a package bearing the address "1713 West Cary Street." Inspector Green obtained a federal search warrant to allow him to examine the contents of the package. Inside the package, Inspector Green found marijuana, known in street terminology as a "party ball," which consisted of five "bricks" wrapped in several layers of clear plastic wrap and duct tape.

Having found marijuana, Inspector Green sought and obtained permission to place a beeper alarm in the package. The alarm is designed to transmit a signal to authorities in the event the package is breached. After removing a portion of the marijuana,[1] Inspector Green installed the beeper alarm and sprayed the wrapping around the marijuana with fluorescent detection powder. Inspector Green delivered the package to 1713 West Cary Street. Approximately seven minutes after delivery, the beeper alarm was activated, indicating that the package had been breached.

Having been alerted by the beeper alarm, the search warrant team, led by Detective William Potter of the Richmond Police Department, approached the residence at 1713 West Cary. After knocking and announcing the presence of the search warrant team, Detective Potter heard a crashing sound emanating from the house. Detective Potter and the search warrant team entered the residence. Detective Potter proceeded upstairs to the residence's kitchen area, where he found the package. The package was empty and located near an open window. After searching the remainder of the residence, Detective Potter searched the yard in the rear of the residence. Under the open kitchen window, Detective Potter found a backpack containing the marijuana that Inspector Green had delivered to 1713 West Cary.

Officer L. W. Holston of the Richmond Police Department had been deployed to a surveillance position at the rear of the residence. After the search warrant team had announced its presence, Officer Holston observed the defendant jump out of a window in the rear of the residence into a tree. The defendant dropped to the ground from a tree branch and began running down an alley. Officer Holston and another officer gave chase, eventually apprehending the defendant. Officer Holston searched the defendant and found a small amount of marijuana. The defendant was arrested and returned to 1713 West Cary.

Inspector Green arrived at 1713 West Cary after the defendant had been apprehended by Officer Holston. Inspector Green had the defendant's hands examined under a "black light." The examination revealed the presence of fluorescent detection powder on the defendant's hands. No one

---

[1] The marijuana removed from the package was ultimately labeled as Item 3A and Item 3B on Commonwealth's Exhibit 5 and as Item 3 on Commonwealth's Exhibit 6. At trial, the marijuana that Inspector Green removed from the package was marked as Commonwealth's Exhibit 7D. To avoid confusion, the Court will refer to the removed marijuana as Exhibit 7D.

else encountered by the authorities at 1713 West Cary had fluorescent detection powder on their hands.

After being advised of his rights under *Miranda*, the defendant made a brief statement to Detective John Garcia of the Richmond Police Department. In his statement, the defendant admitted possessing a small amount of marijuana, denied ever handling the package or its contents, and denied that he was the "main man."

The Virginia Court of Appeals in the case of *Hill v. Commonwealth*, 17 Va. App. 480 (1993), confirmed that mature stalks and sterilized seeds may not be used for the purpose of meeting statutory minimum weight requirements in prosecutions under § 18.2-248.1. The *Hill* case had been prosecuted in the City of Richmond, and the officers responsible for investigating Mr. Scott were acquainted with the ruling of the Court of Appeals. The testimony in this case reveals that the officers sought to remove "stems" as well as seeds from the plant material that was seized. No mention of "stems" is made in the statute; however, no adequate distinction has been made between "stems" and "stalks." The Commonwealth offered no expert testimony on the issue and consultation of dictionaries for guidance leads to circuitous interchangeability of terms.[2] Although it is not an issue in this case, the distinction between "stalks" and "mature stalks" appears elusive as well. Without adequate definition of "stems," the Court must exclude them from the calculation of minimum weight requirements for conviction under § 18.2-248.1.

After manually removing most of the stems and seeds from the marijuana taken from the backpack, which was introduced as Commonwealth's Exhibit 7C, the police attempted to further remove stems and seeds by the use of a food processor. According to Detective Potter, after removing the stems, the marijuana buds were placed in the food processor for thirty to forty seconds. This was done to separate the leaf marijuana from the stems and seeds. Detective Potter testified that the food processor was utilized for "about an hour and then it burned up." Without the food processor, the police resumed the task of separating the stems and seeds manually.

As previously noted, Inspector Green had removed a quantity of marijuana from the box before delivering it to 1713 West Cary Street. When

---

[2] *A Dictionary of Agricultural and Allied Terminology*, John N. Winburne, ed. (Michigan State University Press, 1962), defines "stalks" and "stems" as follows: "stalk. 1. The stem or main axis of a plant, especially of an herbaceous plant." "stem. 1. The principal axis of a plant from which buds and shoots develop; a tree trunk; stock; stalk."

the police attempted to remove the stems and seeds from the marijuana that Inspector Green had removed from the package prior to delivery, which was introduced as Commonwealth's Exhibit 7D, they utilized a series of grates to assist them. The food processor was never used on Exhibit 7D.

The defendant was charged with a violation of § 18.2-248.1(a)(3) and with conspiracy to distribute marijuana. At the conclusion of the Commonwealth's case, the defendant moved to strike the Commonwealth's evidence concerning both charges. The Court granted the Motion to Strike concerning the conspiracy charge because there was no evidence of any other person being involved. The Court took the remaining issues under advisement and the defendant rested without offering any evidence. The defendant renewed his Motion to Strike, and the Court directed the parties to submit briefs in support of their respective positions.

The defendant advances two arguments in support of his Motion to Strike. First, he contends that the evidence is insufficient to prove that he knowingly and intentionally possessed the marijuana. Alternatively, the defendant argues that the presence of seeds and stems in the marijuana introduced into evidence renders any weight determination invalid. The defendant contends that, without a valid determination of the weight of the marijuana, the defendant can only be found guilty of a misdemeanor under § 18.2-248.1.

In support of the charge that the defendant knowingly and intentionally possessed the marijuana, the Commonwealth relies on circumstantial evidence. For circumstantial evidence to be sufficient to support a conviction, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every rational hypothesis of innocence." *Rogers v. Commonwealth*, 242 Va. 307, 317 (1991), *quoting, Inge v. Commonwealth*, 217 Va. 360, 366 (1976). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion'." *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979), *quoting, Karnes v. Commonwealth*, 125 Va, 758, 764 (1919).

In this case, the evidence presented by the Commonwealth is sufficient to establish, beyond a reasonable doubt, that the defendant knowingly and intentionally possessed the marijuana delivered to 1713 West Cary by Inspector Green. The defendant's presence at the residence, his flight from the residence upon the arrival of the police, the discovery of the marijuana

under the window through which the defendant effectuated his escape, the discovery of marijuana on his person, the discovery of a pager on his person, the presence of fluorescent detection powder on his hands, and the absence of fluorescent detection powder on anyone else at 1713 West Cary, lead inexorably to the conclusion that the defendant knowingly and intentionally possessed the marijuana delivered to 1713 West Cary by Inspector Green.

In addition to the marijuana actually delivered to 1713 West Cary, the Commonwealth contends that the defendant constructively possessed Commonwealth's Exhibit 7D, the marijuana Inspector Green removed from the package when he installed the beeper alarm. To establish constructive possession, the Commonwealth must prove "that the defendant was 'aware of both the presence and character of the substance and that it was subject to his dominion and control'." *Blake v. Commonwealth*, 15 Va. App. 706, 708 (1993), *quoting, Powers v. Commonwealth*, 227 Va. 474, 476 (1984).

On the evidence presented the Commonwealth has failed to establish that the defendant constructively possessed Exhibit 7D. Because Exhibit 7D was not in the package when the defendant opened the package, the Commonwealth cannot prove that the defendant was aware of its character. Furthermore, the Commonwealth did not produce any evidence demonstrating that the defendant ever exercised dominion and control over Exhibit 7D.

Additionally, the Commonwealth's burden of proof is met concerning the requirement that the defendant "sell, give, distribute, or possess with intent to sell, give, or distribute marijuana." Although the defendant appears to concede this issue by never raising it, this element of proof is required for conviction. The Commonwealth's burden is met in two ways. First, the defendant was the recipient of a package containing marijuana that was "distributed" by use of the U.S. Mail. Second, by use of the U.S. Mail, the defendant came into possession of a large quantity of marijuana and was the intended recipient of a total quantity of 9.82 pounds.[3] The discovery of a beeper on his person gives further support to the conclusion that he possessed this contraband with the intent to distribute.

---

[3] The Court finds that the defendant came into actual possession of 63.4 ounces of plant material; however, he was the intended recipient of 9.82 pounds which the Court considers as evidence of his intent to distribute.

In support of his second argument, the defendant relies on Va. Code § 54.1-3401 and *Hill v. Commonwealth*, 17 Va. App. 480 (1993). Va. Code § 54.1-3401 defines marijuana as:

> any part of a plant of the genus Cannabis whether growing or not, its seeds or resin; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or its resin. Marijuana shall not include any oily extract containing one or more cannabinoids unless such extract contains less than twelve percent of tetrahydrocannabinol [THC] by weight, or the mature stalks of such plant, fiber produced from such stalk, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks, fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

Because mature stalks and sterilized seeds are not marijuana under Va. Code § 54.1-3401, the Court of Appeals has consistently held that mature stalks and sterilized seeds cannot be utilized in determining the weight of marijuana seized from the defendant. *See, e.g., Hill*, 17 Va. App. 480 (1993); *Jenkins v. Commonwealth*, No. 2271-92-1 (Ct. of Appeals April 19, 1994) (unpublished opinion); *Guzman v. Commonwealth*, No. 1211-93-2 (Ct. of Appeals June 7, 1994) (unpublished opinion); *Allen v. Commonwealth*, No. 2559-93-1 (Ct. of Appeals May 30, 1995), *rev'd on other grounds*, (Ct. of Appeals October 31, 1995) (unpublished opinion).

In this case, the marijuana introduced into evidence by the Commonwealth does contain seeds and stems. Because no evidence was introduced by the Commonwealth concerning whether or not the seeds are sterile, the seeds may not be utilized in determining the weight of the marijuana which was seized. Because the Court cannot determine if "stems" are a variety of "stalk," they must be excluded from the calculation as well.

Given the presence of the seeds and stems, the question now becomes whether the Commonwealth can prove the weight of the amount seized. Faced with a similar situation in *Hill*, the Court of Appeals held:

> [t]he Commonwealth suggests that because the proof only had to establish more than one-half ounce of marijuana, the trier of fact could have inferred that 2.98 ounces, less the mature stalk and the seeds, exceed one-half ounce. On the evidence in this record, any such inference would have been purely speculative because no facts were proved that would have supported such an infer-

ence. Therefore, the evidence is insufficient as a matter of law
. . . .

17 Va. App. at 485.

The Court of Appeals revisited the issue in *Allen*. In *Allen*, the defendant was found in possession of 40.5 ounces of plant material, which was composed of marijuana leaf and seeds. The evidence presented did not establish whether or not the seeds were capable of germinating. The trial court found the defendant guilty of possessing more than one-half ounce of marijuana with the intent to distribute.

A divided panel of the Court of Appeals reversed the conviction. Over a vigorous dissent from Chief Judge Moon, the majority of the panel, citing the *Hill* rationale, found the evidence insufficient to prove anything more than a misdemeanor under the statute. In his dissent, Chief Judge Moon argued that there was sufficient evidence for the Judge to conclude that the defendant possessed more than one-half ounce of marijuana. With regard to "Bag 9," which contained 5.63 ounces of marijuana leaf and seeds, Chief Judge Moon writes:

> Bag "9" is obviously a clear plastic bag of plant material containing, as Deutsch testified, "some seeds," not a bag of seeds containing some plant material. One can handle Bag "9" and, without removing the marijuana and the seeds from the bag, tell that the weight of seeds in the bag is inconsequential compared to the weight of the other plant material. By isolating seeds to one corner of the bag and feeling the seeds, it is apparent that the seeds are not of matter possessing an unusually high specific gravity. It is obvious that the plant material greatly outweighs that of the seed material. Only if the seeds weigh eighty times more than does the plant material could the evidence be insufficient.

*Allen*, at p. 3 (Moon, J., dissenting).[4] Judge Moon concluded that, because the evidence was such that a "rational fact finder could have believed beyond a reasonable doubt . . . " that the defendant possessed more than one-half ounce of marijuana, there was sufficient evidence to support the conviction. *Id.* at pp. 3-4.

---

[4] In a unique circumstance, the Court of Appeals had the actual evidence bags delivered to the Court for inspection and examination.

The Court of Appeals granted a rehearing *en banc* to review the panel's decision in *Allen*. By an order dated October 31, 1995, the Court of Appeals reversed the panel decision for the reasons contained in Chief Judge Moon's dissent. *Allen v. Commonwealth*, No. 2559-93-1 (Ct. of Appeals May 30, 1995), *rev'd en banc*, (Ct. of Appeals October 31, 1995) (unpublished opinion).

In this case, the Commonwealth has presented evidence that the defendant came into actual possession of 63.4 ounces (3.96 pounds) of marijuana, less the weight of any seeds and stems contained in the sample. Clearly, the Commonwealth's evidence is insufficient to find the defendant guilty of a violation of § 18.2-248.1(a)(3), which requires five or more pounds. However, the Commonwealth has presented sufficient evidence to find that the weight of the illegal substance exceeded one-half ounce but not more than five pounds.

In reaching this conclusion, this Court, like Chief Judge Moon in *Allen*, has examined the evidence and determined that the majority of it is leaf material and that the seeds and stems "are not of matter possessing an unusually high specific gravity." For the evidence to be insufficient to support a conviction under § 18.2-248.1(a)(2), the seeds and stems would have to weigh more than 125 times that of the plant material and stems.[5] Clearly, this is not the case. The Commonwealth has met its burden of proof beyond a reasonable doubt. The volume of plant material leads to no other reasonable conclusion. Therefore, the defendant's Motion to Strike is granted regarding the violation of § 18.2-248.1(a)(3), but denied regarding the lesser included offense of violating § 18.2-248.1(a)(2), and the Court finds the defendant guilty of the charge that he did "sell, give, distribute, or possess with intent to sell, give, or distribute marijuana" in an amount more than one-half ounce but not more than five pounds.

Belatedly, the Commonwealth urges the Court to find the defendant guilty of an attempt to commit a violation of § 18.2-248.1(a)(3) involving an amount of contraband in excess of five pounds. Upon review of the unreported case cited by the Commonwealth, *Thompson v. Common-*

---

[5] For the 63.4 ounces of material contained in Exhibit 7D to be insufficient to support a conviction of possession of 0.5 ounce of marijuana, seeds and stems must represent more than 62.9 ounces of the material. A simple mathematical calculation (62.9 ounces ÷ 0.5 ounce) reveals that for the seeds and stems to represent more than 62.9 ounces of the material, they would have to weigh at least 125.8 times more than the leaf. Expressed differently, the stems and seeds would have to represent more than 62.9/63.4 or 99.21% of the total weight of the amount in question.

*wealth*, No. 0475-95-2 (Court of Appeals, February 27, 1996) (unpublished), the Court finds the evidence in this case insufficient to sustain a conviction of attempt to violate § 18.2-248.1(a)(3).