COURT OF APPEALS OF VIRGINIA


Present: Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


CHRISTOPHER FRANCIS FLOWERS, S/K/A
 CHRISTOPHER F. FLOWERS, III
                                        MEMORANDUM OPINION* BY
v.          Record No. 0128-97-1         JUDGE JOSEPH E. BAKER
                                           JANUARY 27, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Edward W. Hanson, Jr., Judge

              James O. Broccoletti (Zoby & Broccoletti, on
              brief), for appellant.

              H. Elizabeth Shaffer, Assistant Attorney
              General (Richard Cullen, Attorney General, on
              brief), for appellee.


     Christopher Francis Flowers (appellant) appeals from his

bench trial conviction by the Circuit Court of the City of

Virginia Beach (trial court) for possessing a firearm after

having been convicted of a felony in violation of Code

§ 18.2-308.2.  He contends the evidence is insufficient to prove

he possessed a firearm as charged in the indictment.  We agree

and reverse the conviction.

     On December 2, 1995, pursuant to a complaint of unlawful gun

possession, Virginia Beach Police Officers S. E. Jerrome and

D. A. Randler went to the Beach Grill in Virginia Beach.  Randler

was the first to arrive and observed appellant and his brother,

James, standing in front of the grill.  Appellant had "a visible

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

swollen injury on . . . his forehead" and appeared to be intoxicated. Randler had been advised by Jerrome that appellant was a convicted felon in possession of a gun, and the officers intended to make inquiry concerning that complaint.[1] With permission, the officers entered the grill and were escorted behind the bar to an office area. The office was small, "maybe two or three paces deep," and was where "[appellant] would do paperwork and business for the bar." A person standing in the middle of the office could touch the shelves on both walls.

Appellant cooperated fully with the police. Randler asked appellant if he was a convicted felon and "if there was a gun on the premises." Appellant responded that he was a convicted felon and that "he had one in the office." Randler asked appellant "to take [him] to where the pistol was." In response, appellant pointed to a shelf in the office, but the gun was not there. Sometime prior thereto, James had moved the gun "for safety." Randler stated that he "did not see [appellant] in possession of the pistol" and that, although forensics had tested it, they were unable to find any of appellant's fingerprints on it. When Randler asked to take possession of the gun, James left the office, "went to the kitchen of the restaurant area," and returned with a gun. Randler did not know "where [James] retrieved it from." James gave the gun to Randler, who then

---

[1]That information was hearsay from an unrelated case not relevant to the matter before us.

arrested appellant for possession of a firearm after being convicted of a felony.

When appellant was arrested and read his _Miranda_ rights, he made a written statement in which he said that the gun belonged to his wife who, with appellant's father, owned the grill; that the gun was given to his wife by Mike Blasko "for protection"; that appellant knew he could not possess a gun but did not know he could not be in the same area as a gun; that the night managers were aware of the gun; and that all night employees were female. Appellant's employment was limited to "paperwork," and he was not shown to be a "night manager."

The record does not show that appellant ever physically touched the gun, nor does it show when appellant actually may have had access to it. James "retrieved" the gun from atop the cooler in the kitchen area that served the restaurant, and the evidence did not show where that location was in relation to the office in which appellant worked. Although there is no evidence of that distance, and none to show that appellant ever physically touched the gun, the Commonwealth argues that the evidence shows appellant constructively possessed the gun. It asserts that Randler's testimony should be construed to prove appellant admitted that, as a convicted felon, he unlawfully constructively possessed the gun and, therefore, on the evidence contained in this record, the judgment of the trial court should be affirmed. We disagree.

The Commonwealth relies on Blake v. Commonwealth, 15 Va. App. 706, 427 S.E.2d 219 (1993), as authority for its constructive possession theory.  In Blake, in which we applied the principles of constructive possession of controlled substances, we said, "[t]o prove constructive possession of drugs, the Commonwealth must show that the defendant was 'aware of both the presence and character of the substance and that it was subject to his dominion and control.'"  Id. at 708, 427 S.E.2d at 220 (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).  Although "proximity to a controlled substance is insufficient alone to establish possession, it is a factor to consider when determining whether the accused constructively possessed drugs." Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 882 (1992) (en banc); see Blake, 15 Va. App. at 708, 427 S.E.2d at 220.

> However, in order for . . . occupancy of property . . . to be sufficient to support the inference that the . . . occupant also possessed contraband that was located on the property . . . , the . . . occupant must be shown to have exercised dominion and control over the premises and to have known of the presence, nature, and character of the contraband at the time of such . . . occupancy.

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83-84 (1992) (emphasis added).

Applying the principles adopted in Blake, this record must show not only that appellant was "aware of the presence" of the gun but also that, at the time charged in the indictment, he had

dominion and control over the gun. When we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom, we find that the evidence fails to prove beyond a reasonable doubt that appellant knowingly and intentionally exercised dominion and control over the weapon at the time charged in the indictment. The evidence failed to prove that appellant had access to the gun at that time, even though he initially thought he did. See Burchette, 15 Va. App. at 435-36, 425 S.E.2d at 83-84 (holding evidence insufficient to prove constructive possession of marijuana found in accused's car where, among other things, record contained no evidence permitting reasonable inference "that [the accused] occupied the vehicle or . . . exercised dominion and control over it while the marijuana was present in it"). Although the Commonwealth is not required to prove the precise date on which the offense occurred, see Marlowe v. Commonwealth, 2 Va. App. 619, 347 S.E.2d 167 (1986); see also Code § 19.2-226(6), it cannot leave to the fact finder's speculation when the offense may have occurred.

Here, the evidence discloses that appellant worked in a small office where a gun had been kept at an undetermined time. The gun belonged to one of the owners of the grill and was kept for the benefit of the night managers. No evidence proved that appellant was a night manager. The evidence revealed that the office in which appellant worked when he was on the premises was

one of three places the gun may have been kept, but it was not shown to have been in the office on or about the date of appellant's arrest. Although it reasonably could be inferred from this record that the gun had been in the office at a time other than the day of appellant's arrest, the Commonwealth failed to prove beyond a reasonable doubt that appellant was present in the office at the same time as the gun, on or about the date alleged in the indictment. See Burchette, 15 Va. App. at 435-36, 425 S.E.2d at 83-84.

For that reason, we hold that the evidence was insufficient to establish the elements of the offense charged. Therefore, we reverse the judgment of the trial court and enter final judgment dismissing the indictment.

<u>Reversed and final judgment.</u>